IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-547-FL

| | |
|---|---|
| JULIE JOHNSTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| ) | |
| LEITH, INC.; DANNY WILLIAMS; ) | |
| VANCE NORDAN, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on defendants' motion to dismiss (DE # 5), filed December 10, 2010. Plaintiff filed a response in opposition on January 20, 2011, and defendants filed a reply on February 7, 2011. In this posture, the issues raised are ripe for review. For the reasons that follow, defendants' motion to dismiss is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff brought suit in November 2010 in Wake County Superior Court. On December 3, 2010, defendants filed a notice of removal. Plaintiff's claims include: hostile work environment sex discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.*, wrongful termination in violation of North Carolina public policy, negligent retention, supervision, and hiring, negligent infliction of emotional distress ("NIED"), and intention infliction of emotional distress ("IIED"). Plaintiff seeks monetary relief, compensatory damages, and punitive damages. On December 10, 2010, defendants filed the instant motion.

Defendants ask the court to dismiss five of plaintiff's claims, specifically: 1) the Title VII sex

discrimination claim against defendant Leith, 2) the wrongful discharge claim against defendant Leith, 3) the claim for negligent retention, supervision, and hiring against defendant Leith, 4) the claim for NIED against all defendants, and 5) the claim for IIED against all defendants.[1]

## STATEMENT OF FACTS

The facts pertinent to the disposition of the instant motion, as alleged by plaintiff, are as follows. Plaintiff, a single woman, is a citizen of Wake County, North Carolina. Defendant Leith is a North Carolina corporation with its principal place of business in Wake County. Defendant Leith is an automobile dealership that employs 500 or more employees in the United States and more than 300 employees at its facilities in Wake County. Defendant Danny Williams was the general manager of Auto Park Imports, Inc., and defendant Vance Nordan was the Finance Director of Auto Park Honda and Leith Volkswagen.

Plaintiff was hired by Leith in August 2004, and began working as a sales consultant at the Auto Park Honda facility. Plaintiff received positive performance reviews and was promoted to the position of finance manager in November 2004. The basis of plaintiff's complaint consists of statements made to her and actions taken against her by various defendants beginning in 2007.

Plaintiff alleges that throughout 2007, defendant Nordan made remarks to her at work of a sexual nature, such as, "Julie, you're single . . . You need to get you some . . . You probably own sex toys including vibrators, since you don't have a boyfriend." (Compl. ¶ 26.) Plaintiff alleges that on at least two occasions in 2007, defendant Nordan told plaintiff, "[y]ou probably require nine volt

---

[1] The only claim that defendants' do not seek to dismiss at this time is plaintiff's claim for retaliatory discrimination under Title VII. Defendants Williams and Nordan also moved to dismiss all claims against them for lack of personal jurisdiction due to insufficient service of process. However, defendants Williams and Nordan have withdrawn their challenge to proper service, noting that on January 13, 2011, defendants' counsel notified plaintiff's counsel that he would accept service on defendants' behalf.

batteries instead of AA batteries for your sex toys." (Id. ¶ 27.) At some point in spring 2007, plaintiff alleges that she walked into a sales office where defendant Nordan and another employee were talking about "blue balls." (Compl. ¶ 28.) Later that afternoon, plaintiff alleges she found two blue balloons attached to the back of her car, and plaintiff states that another sales associate told her defendant Nordan put the balloons on her car. Plaintiff alleges that in September or October of 2007, defendant Nordan made a comment regarding plaintiff's menstrual cycle, and in the last quarter of 2007, defendant Nordan approached plaintiff and made suggestive comments that he "want[ed] [plaintiff] to be [his] girlfriend for the night," while putting his arm around plaintiff. (Compl. ¶ 30.) Plaintiff alleges that defendant Nordan continued to make advances towards her, and she refused them, and as a result, defendant Nordan "acted distantly" towards plaintiff. (Compl. ¶ 33.)

In March 2008, defendants Nordan and Williams demoted plaintiff from finance manager to Sales Consultant. Defendant Williams told plaintiff that the reason for the demotion was that she was not a team player. This demotion resulted in a decrease in total compensation in excess of sixty percent as well as the use of a company vehicle. Plaintiff alleges that her demotion was the result of her rejection of defendant Nordan's sexual advances. Additionally, plaintiff alleges that in June 2008, defendant Nordan and another female employee began an intimate relationship, and as a result of their relationship, the female employee received preferential treatment at work, specifically, a greater amount of sales leads.

In August and September of 2008, plaintiff complained verbally to the sales manager at Auto Park Honda about remarks made by a male sales consultant, Mark Williams, regarding a female customer, "She's nice, I could do her. She's got legs up to her ass," as well as a joke made by another male sales consultant, Charlie Bruce, using the words "penis" and "dickectomy." (Compl.

3

¶ 5.) Around this same time, plaintiff met with the sales manager to conduct a review of her performance, and plaintiff received an excellent review.

On October 21, 2008, plaintiff filed a written complaint via email to the compliance officer as well as a human resources manager. In her complaint, plaintiff stated that sexually offensive remarks were made by co-workers and her verbal complaints had no effect on her employees' offensive behavior. In the complaint, plaintiff also stated that while she was demoted from the position of finance manager, male employees were promoted to that position despite personal misconduct on the job. On October 23, 2008, the compliance officer and another employee met with plaintiff to discuss her written complaint. They met again on October 28, 2008, informing plaintiff that an investigation would be conducted based on plaintiff's allegations. Plaintiff alleges that the week after submitting her complaint, she began experiencing retaliation. Specifically, plaintiff alleges that internet sales leads were withheld from her, and an inequitable number of sales leads were awarded to the female employee with whom defendant Nordan was having a relationship.

The last two incidents plaintiff describes occurred after November 2008. On November 4, 2008, plaintiff alleges that an employee, Bill McNamara, made a remark to plaintiff, "If you've got the blank, I've got the balls," and repeatedly asked plaintiff to identify what word he meant by saying "blank." (Compl. ¶ 6.) Also in November 2008, plaintiff heard McNamara inform another male employee about how his bonus could purchase a certain number of lap dances.

On November 7, 2008, the same compliance officer and employee met with plaintiff and told her that some of her complaints had been acted upon and that other would be acted upon. On December 2, 2008, McNamara told plaintiff she must sell nine cars before December 31, 2008, to achieve her sales quota and keep her job. On December 30, 2008, the compliance officer called

4

plaintiff to see how she was doing. Plaintiff complained about being discriminated against because of the lack of sales leads forwarded to her. Plaintiff also told the compliance officer that defendant Nordan and the female employee were still in a relationship, and this was also affecting her sales leads. On December 31, 2008, defendant Williams and McNamara told plaintiff her employment was terminated because of her failure to sell nine vehicles in December.

Plaintiff alleges that she was devastated by the loss of her job, she has suffered from depression, has been diagnosed with a mental disorder, and prescribed medication.

On March 31, 2009, plaintiff submitted a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On August, 2, 2010, the EEOC issued a Notice of Right to Sue.

## DISCUSSION

A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1940 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009)

(citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949, and Twombly, 550 U.S. at 557).

B.  Defendants' Motion to Dismiss

    1.          Title VII Sex Discrimination

Plaintiff alleges sex discrimination under Title VII against defendant Leith based on two theories: hostile work environment and retaliation. Defendants have not moved to dismiss plaintiff's retaliation claim, thus the court addresses the hostile work environment claim.[2]

In evaluating plaintiff's hostile work environment claim, the court must first determine what conduct it may consider based on the applicable statute of limitations. Defendants contend that plaintiff cannot rely on the "continuing violation" theory because no actionable conduct occurred within the 180 day period immediately preceding the filing of plaintiff's EEOC charge, that is, on or after October 2, 2008.[3] The continuing violation theory allows for consideration of incidents that occurred outside the time bar when those incidents are part of a "single, ongoing pattern of discrimination," or when the incidents make up part of a hostile work environment claim. Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007). In order for an employee's EEOC charge to be timely, the employee "need only file a charge within 180 . . . days of any act that is part of the hostile work environment." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 118 (2002).

---

[2] Plaintiff's response to defendants' motion to dismiss notes that plaintiff "was given disparate treatment with regards to the appointment of sales leads." (Pl.'s Resp. Opp'n Mot. Dismiss 18.) Plaintiff's complaint only makes claims for sex discrimination based on a hostile work environment and retaliation, and thus the court will not address any disparate impact argument.

[3] Plaintiff filed her EEOC charge on March 31, 2009.

6

The Fourth Circuit has applied the rule in Morgan to hold that an incident falling within the applicable limitations period "need only, in order for the continuing violation doctrine to apply, have contributed to the hostile work environment." Gilliam v. South Carolina Dept. Of Juvenile Justice, 474 F.3d 134, 141 (4th Cir. 2007) (citing Morgan, 536 U.S. at 117). Thus, plaintiff does not have to show that one of the acts that occurred after October 2, 2008, was discriminatory in and of itself; it is only necessary that plaintiff show one of the acts contributed to the behavior relating to the incidents that occurred prior to the limitations period. Gilliam, 474 F.3d at 141. To be part of the "same actionable hostile environment claim," the court must examine whether the "pre- and post-limitations period incidents involve[] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." Morgan, 536 U.S. at 120; McDougal-Wilson v. Goodyear Tire and Rubber Co., 427 F.Supp.2d 595, 617 (E.D.N.C. Mar. 31, 2006).

Looking at the facts pleaded in plaintiff's complaint, the court finds that under Morgan, it can consider the conduct of defendant Nordan that occurred outside of the 180-day window because plaintiff has sufficiently plead facts to suggest that the incidents that occurred within the 180-day window involved similar employment actions and were perpetrated by at least some of the same managers. The conduct that plaintiff alleges occurred after October 2, 2008, involves: (1) an inequitable number of sales leads given to plaintiff compared with the number of sales leads given to the female employee with whom defendant Nordan was allegedly having a relationship, (2) repeated comments from employee McNamara involving the phrase, "If you've got the blank, I've got the balls," (3) comments between McNamara and another male employee about lap dances, and (4) various complaints by plaintiff to her employer about problems in the work environment. The pre-limitation period conduct involves defendant Nordan and other employees allegedly making

7

various sexually charged remarks and preventing plaintiff from getting sales leads. Thus the pre- and post- limitation period involved similar types of actions and some of the same managers. The court finds that the facts alleged that occurred within the limitations period constitute part of the same hostile work environment claim, and thus "anchor" plaintiff's claims outside the 180-day window so that the court may consider the claims together as a whole. See Gilliam, 474 F.3d at 142; see also Edwards v. Murphy-Brown, LLC, __ F.Supp.2d __, 2011 WL 124209 at *10-15 (E.D.Va. Jan. 4, 2011) (allowing plaintiff to go forward and plead facts outside of time window that were somewhat vague as to nature and time of occurrence because it was plausible that the occurrences were part of a unitary, continuous and ongoing employment practice).

Considering all of the factual allegations in the complaint, the court turns to plaintiff's claim for hostile work environment sex discrimination. In order to make out a hostile work environment claim based on sex, "a plaintiff must show that the offending conduct (1) was unwelcome, (2) was because of her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (4) was imputable to her employer." Hoyle v. Freightliner, LLC, __ F.3d __, 2011 WL 1206658 at *6 (4th Cir. 2011).

The court finds that under Hoyle, plaintiff has stated a claim for hostile work environment. As to the first prong, the plaintiff's complaint alleges that the conduct was unwelcome and caused her distress. As to the second prong, plaintiff sufficiently pleads facts that, taken as true, could be considered to have so sexualized the workplace to meet the "because of sex" requirement. See Hoyle, at *6. "A trier of fact may reasonably find discrimination when a 'a female victim is harassed in such sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by a general hostility to the presence of women in the workplace.'" Id. (quoting Oncale v. Sundowner

8

Offshore Servs. Inc., 523 U.S. 75, 80 (1998)). In Hoyle, the Fourth Circuit found that a jury could find that repeatedly placing photos of nude women or women in sexually provocative dress and poses in common areas was enough to meet the "because of sex" requirement. Id. Here, plaintiff has alleged conduct by various employees—offensive, sexually suggestive and deragatory statements and actions—that could be motivated by a general hostility towards women in the workplace.

As for the third prong, plaintiff has alleged facts to suggest that the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. There are both subjective and objective components to this element. Hoyle, at *8 (quoting Ocheltree v. Scollon Produc., Inc., 335 F.3d 325, 333 (4th Cir. 2003)). "The environment must be perceived by the victim as hostile or abusive, and that perception must be objectively reasonable." Id. (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993)). The court is guided by the analysis in Hoyle, which found that various displays posted in the workplace that portrayed women in a sexually subservient and demeaning light were sufficiently severe to alter the conditions of plaintiff's employment and create an abusive work environment. Hoyle, at *8. Most importantly, the court noted that the record clearly demonstrated that the plaintiff in Hoyle "*subjectively* viewed the incidents and displays . . . as abusive." Id. The court noted that "only a contrary *credibility determination*, plainly not permitted on summary judgment could lead to a contrary finding as to the subjective prong of the applicable test." Id. In the present case, plaintiff has alleged facts that include sexualized remarks directed at her as well as negative treatment based on rejecting the sexual advances of a supervisor. Plaintiff could subjectively view these incidences as abusive, and the court cannot find otherwise at this stage in the proceedings.

Lastly, plaintiff has alleged conduct that could be imputed to defendant Leith. "In a case

where an employee is sexually harassed by a coworker, the employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it." Hoyle, at *9. The parties have not addressed this issue in their briefs.[4] Taking the facts as alleged in the complaint as true, plaintiff complained to a sales manager as well as filed a written complaint with the compliance officer. Plaintiff was informed that an investigation would be conducted, and that some of her complaints had been acted upon and others would be acted upon. Still, after filing her complaint, more harassment allegedly occurred, plaintiff received fewer sales leads, and was eventually terminated. Plaintiff has sufficiently pleaded the fourth prong of the hostile work environment claim. Accordingly, plaintiff has sufficiently stated a claim for hostile work environment and defendants' motion to dismiss this claim is denied.

2. Wrongful Discharge

Plaintiff alleges that defendants wrongfully discharged plaintiff because of her sex, and in doing so violated the public policy of North Carolina. Plaintiff relies on North Carolina General Statutes § 143-422.2. The statute provides that it is the public policy of North Carolina to protect and safeguard the right of North Carolina citizens to obtain and hold employment without discrimination on the basis of sex. N.C. Gen. Stat. § 143-422.2. Plaintiff's claim specifically states that she was wrongfully discharged on the basis of her sex, and the Fourth Circuit has found that a plaintiff may state such a cause of action under § 143-422.2 when she alleges that she rebuffed the sexual advances of a supervisor. See, e.g., McLean v. Patten Communities, Inc., 332 F.3d 714, 720

---

[4] Defendants argue in their reply that the intervening investigation by defendant Leith cut off any alleged relationship between Nordan's purported conduct in 2007 and the comments made by employees in 2008. However, the court determined that facts outside of the 180-day window may be considered, and to the extent that defendants argue that Leith's consideration of plaintiff's complaints was an "intervening action" to make the 2007 actions no longer part of the same hostile environment claim, at this stage in the proceedings, the court cannot make that determination. See Morgan, 536 U.S. at 118.

10

-721 (4th Cir. 2003); Harrison v. Edison Bros. Apparel Stores, Inc., 924 F.2d 530 (4th Cir.1991). "When an employee is discharged because she has refused to accede to the sexual advances of a supervisor, we are of opinion and hold that the discharge was due to 'discrimination or abridgement on account of ... sex' in the 'terms of employment' in violation of the public policy of North Carolina under § 143–422.2." McLean, 332 F.3d at 720 -721 (citations omitted).

Plaintiff alleges in her complaint that she rejected the sexual advances of defendant Nordan at a company party in 2007. She alleges that "several times during the party, Defendant Nordan pressured Plaintiff to acquiesce to be his partner for the evening." (Compl. ¶ 31.) Based on the facts alleged, the court finds that plaintiff has stated a claim for wrongful discharge under N.C. Gen. Stat. § 143-422.2.

3. Negligent Retention, Supervision, and Hiring

To establish a claim for negligent hiring under North Carolina law, a plaintiff must show: (1) a specific tortious act by the employee; (2) the employee's incompetence or unfitness; (3) the employer's actual or constructive notice of the employee's incompetency or unfitness; and (4) injury resulting from the employee's incompetence or unfitness. E.E.O.C. v. TJX Companies, Inc., 2009 WL 159741, at *10 (E.D.N.C. 2009) (citing White v. Consol. Planning, Inc., 166 N.C.App. 283, 292, 603 S.E.2d 147, 154 (2004)); see also Medlin v. Bass, 327 N.C. 587, 591, 398 S.E.2d 460, 462 (1990)). Similarly, to establish a claim for negligent retention or supervision, "the plaintiff must prove that 'the incompetent employee committed a tortious act resulting in injury to plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency.'" TJX Companies, 2009 WL 159741 at *10 (citation omitted). "Consequently, to establish a claim for either negligent hiring or negligent supervision/retention, the plaintiff must prove that the employee

11

committed a tortious act against her." Id.

In McLean, the Fourth Circuit interpreted North Carolina law to require a common-law tort to underly a negligent retention and supervision claim. McLean, 332 F.3d at 719; Jackson v. FKI Logsitex, 608 F.Supp.2d 705, 708 (E.D.N.C. Mar. 31, 2009); but see Efird v. Riley, 342 F.Supp.2d 413, 429-30 (M.D.N.C. 2004) (denying motion to dismiss and finding that a Title VII claim may serve as a "tortious act" under North Carolina law for purposes of a negligent retention and supervision claim). Plaintiff argues that she has alleged that defendants engaged in tortious acts of IIED and NIED. As discussed below, plaintiff has not stated a claim for IIED or NIED, and thus plaintiff's claim for negligent hiring based on those claims fails. Plaintiff's remaining arguments are that defendant Nordan acted incompetently and negligently in his treatment of her and that defendant Nordan retaliated against her. As described below, defendant Nordan's conduct as alleged was not negligent, but intentional, and as stated above, plaintiff may not base her negligent hiring, retention, and supervision claim on retaliation.

Accordingly, plaintiff cannot show that defendants committed a tortious act against her for the purpose of her negligent hiring, retention, and supervision claim. As such, defendants' motion to dismiss this claim is granted.

    4.    Infliction of Emotional Distress

Plaintiff seeks relief for both IIED and NIED from all defendants. Defendants argue that plaintiff does not plead facts sufficient to state a claim under either cause of action, especially under the relevant statutes of limitations for these torts under North Carolina law.

The statute of limitations for intentional infliction of emotional distress is three years. See N.C. Gen. Stat. §1-52(5); Waddle v. Sparks, 331, N.C. 73, 85, 414 S.E.2d 22, 28 (1992). Likewise,

12

the statute of limitations for negligent infliction of emotional distress is three years. McDougal-Wilson, 427 F.Supp.2d at 620 (citing King v. Cape Fear Mem'l Hosp., 96 N.C. App. 338, 341, 385 S.E.2d 812, 814 (1989)). The three-year period of time for these torts accrues when the conduct of defendant causes extreme emotional distress, or when plaintiff becomes aware or should reasonably have become aware that she has been injured. See, e.g., McDougal-Wilson, 427 F.Supp.2d at 620 (citing Pembee Mfg. Corp. v. Cape Fear Constr. Co., 313 N.C. 488, 493, 329 S.E.2d 350, 354 (1985)); Johnston v. ADT Sec. Sys., Inc., 1999 WL 1940046 at *3-4 (W.D.N.C. Mar. 10, 1999).

Defendants contend that only the acts alleged to have occurred after November 1, 2007, may be considered in analyzing plaintiff's IIED and NIED complaints.[5] The court disagrees. See Jackson v. Kimel, 992 F.2d 1318, 1324 (4th Cir. 1993). In Waddle, the North Carolina Supreme Court noted that if the plaintiff in that case had testified that any specific incident of conduct occurred within the three year statute of limitations period for IIED, the plaintiff's evidentiary forecast would have been sufficient to survive summary judgment. 331 N.C. at 73, 414 S.E.2d at 28-29. Jackson interpreted Waddle to mean that if a plaintiff alleges some specific conduct within the statute of limitations, the court can look to acts prior to the three year period for the context of the incident, even if the acts are not compensable. Jackson, 992 F.2d at 1324. Defendant acknowledges plaintiff has alleged incidences that occurred after November 1, 2007, so the court looks to all the facts plaintiff alleges for the context of the facts plead within the three year time frame.[6] In doing so, the court finds that plaintiff has not stated a claim for IIED or NIED.

---

[5] Plaintiff filed her civil complaint alleging the tort claims on November 1, 2010, in Wake County Superior Court.

[6] Notably, it is not clear from the complaint when plaintiff knew or became aware of her injury, which is when the statute of limitations clock begins to run. Plaintiff merely contends that she suffered injury, but does not specify when the injury began. Regardless, under the rule of Jackson, the court will consider all the facts alleged in the complaint, whether occuring before November 1, 2007, or not.

13

a.   IIED

The "essential elements" of an action for intentional infliction of emotion distress are: "1) extreme and outrageous conduct by the defendant, 2) which is intended to and does in fact cause 3) severe emotional distress." Waddle, 331 N.C. at 82-83, 414 S.E.2d at 27. Whether the alleged conduct is sufficiently extreme and outrageous is a question of law. " Thomas v. Northern Telecom, 157 F.Supp.2d 627, 635 (W.D.N.C. 2000). To be considered "extreme and outrageous" the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (citing Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 493, 390 S.E.2d 116, 123 (1986)). As defendant notes, to show extreme and outrageous conduct in the employment context, there is an "extremely rigorous standard." Thomas, 157 F.Supp.2d at 635. Discharge from employment, even if unlawful, does not by itself amount to outrageous conduct. English v. Gen. Elec. Co., 977 F.2d 572 at *7 (4th Cir. 1992) (citing Haburjak v. Prudential Bache Securities, 759 F.Supp. 293 (W.D.N.C. 1991)). Similarly, demotion alone does not amount to outrageous conduct. Id. (citing Hardin v. Champion Int'l Corp., 685 F.Supp. 527 (W.D.N.C. 1987)).

The Fourth Circuit has acknowledged the stringent standard for outrageous conduct. In Keziah v. W.M. Brown & Son, 888 F.2d 322 (4th Cir. 1989), the district court's grant of summary judgment for defendant was affirmed on plaintiff's IIED claim when plaintiff alleged, among other things, that her telephone messages were withheld and used by male sales representatives to usurp her sales leads, information was secretly removed from her files and mail, and she was harassed, humiliated, and otherwise subject to an adverse employment environment. Id. at 326. Courts have found some sexually suggestive conduct in the workplace to be extreme and outrageous, however

the conduct must be more egregious than what plaintiff has alleged. In Tate v. First-Citizens Bank & Trust Co., 2009 WL 959971 at *1 (E.D.N.C. 2009), plaintiff's supervisor fondled himself in front of plaintiff and made plain, physically suggestive gestures to plaintiff when she visited his office on almost a daily basis for work. Likewise, in Hogan, a general manager made sexually suggestive remarks, and tried to coax the plaintiff into having sex with him, brushed up against plaintiff, rubbed his penis against her buttocks and touched her buttocks with his hands. Hogan, 79 N.C. App. 483, 490, 340 S.E.2d at 121. When the plaintiff refused the manager's advances, he threatened her with bodily injury. Id. Here, plaintiff has not alleged facts to meet the "extreme and outrageous conduct" requirement against any of the named defendants.

With regard to defendant Williams, the only facts alleged with respect to him are that he demoted plaintiff in March 2008, allegedly because she was not a team player, and that he terminated plaintiff in December 2008 because of her failure to sell nine vehicles that month. The law is clear that demotion or discharge is not sufficient conduct to meet the extreme and outrageous standard. With no facts alleged against defendant Williams except that he demoted and then discharged plaintiff, plaintiff's claim for IIED fails as to defendant Williams.

Defendant Nordan is the defendant against whom plaintiff alleges most of the facts supporting her IIED claim. Taking the facts as a whole, the court does not find that they amount to extreme and outrageous conduct. See Tate, 2009 WL 959971 at *1; Hogan, 79 N.C. App. at 490, 340 S.E.2d at 121. The facts plaintiff alleges consist primarily of several sexually suggestive statements made by Nordan over the course of a year, including references to sex objects and menstruation. The only allegation plaintiff makes involving defendant Nordan and physical contact is that he put his arm around plaintiff while asking her to be his girlfriend for the night. While

15

defendant Nordan's conduct, if true, is deplorable, that in and of itself is not enough to meet the extreme and outrageous standard required by North Carolina law.[7] Notably, many of plaintiff's allegations against Nordan involve the relationship plaintiff alleges Nordan had with another female employee. Nothing about the alleged relationship between Nordan and the female employee rises to the level of extreme and outrageous conduct, and plaintiff's claim for IIED fails as to defendant Nordan.

Plaintiff asserts a claim for IIED against defendant Leith based on principles of *respondeat superior*. Under North Carolina law, an employer may be held liable under *respondeat superior* for the tortious acts of its agents in three situations: (1) when the agent's actions are expressly authorized by the principal; (2) when the action is committed within the scope of the agent's employment and in furtherance of the employer's business; or (3) with the agent's actions are ratified by the principal. Jackson, 992 F.2d at 1322. Plaintiff has plead in the complaint that defendant Leith had actual or constructive knowledge of its employees' behavior, and directed, approved of, or failed to take adequate action to stop such behavior, thereby ratifying the employees' allegedly tortious conduct.

However, as described above, plaintiff has not alleged facts to show that Leith's employees engaged in conduct sufficient to meet the extreme and outrageous standard required for a claim for

---

[7] If defendant Nordan's conduct as alleged is true, the court in no way condones it, but maintains that it does not rise to the high level required by North Carolina law to be considered extreme and outrageous. See, e.g., Mullis v. Mechanics & Farmers Bank, 994 F.Supp. 680, 689 (M.D.N.C. 1997) (plaintiff sufficiently plead facts to show extreme and outrageous conduct when she alleged that her supervisor "repeatedly touched her legs and shoulders, rubbed the front of his body against her, and made sexually suggestive remarks to her."); Tate, 2009 WL 959971 at *1 (noting that making sexually suggestive remarks to plaintiff multiple times a week over an extended period of time and touching plaintiff in a sexual manner multiple times might rise to the level of extreme and outrageous conduct); Phillips v. J.P. Stevens & Co., Inc., 1995 WL 794200 at *13 (M.D.N.C. 1995) (extreme and outrageous conduct where supervisor consistently made sexual propositions to plaintiff, rubbed his crotch in her presence while smiling at her, discussed his sexual abilities with her, physically rubbed his crotch against her while she worked, and prevented her from seeking immediate medical attention when she suffered miscarriage symptoms).

IIED in North Carolina. Even the statements made by employees other than defendant Nordan fall short of what is required for extreme and outrageous conduct. Additionally, plaintiff's allegation that sales leads were withheld from her due to the intimate relationship between defendant Nordan and a female employee does not constitute extreme and outrageous conduct. See Keziah, 888 F.2d at 326-327 (no extreme and outrageous conduct when plaintiff alleged that information was secretly taken from her business files, her sales orders and requests for quotes were unnecessarily delayed, her customer accounts were arbitrarily transferred to male representatives, and she was otherwise harassed and humiliated in the work environment). Accordingly, plaintiff's claim for IIED against defendant Leith fails.

b. NIED

To state a claim for NIED, a plaintiff must allege: (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, and (3) the conduct did in fact cause the plaintiff severe emotional distress." McAllister v. Ha, 347 N.C. 638, 646, 496 S.E.2d 577, 582-83 (1998) (citations omitted). Plaintiff does not state a claim for NIED as to any of the defendants.

In a claim for NIED, a plaintiff cannot simply restate facts regarding intentional behavior that form the basis for a claim of IIED to form a claim for NIED. See, e.g., Mitchell v. Lydall, Inc., 1994 WL 38703, at *3 (4th Cir.1994) (finding a claim for NIED is subject to dismissal when "the material factual allegations charge nothing but intentional acts."); Bonham v. Wolf Creek Academy, 2011 WL 576956, at *11 (W.D.N.C. Feb. 9, 2011) (finding plaintiff stated insufficient facts to form a claim for NIED when plaintiff merely restated the same facts that were the basis for plaintiff's IIED claim). Additionally, even if plaintiff alleges negligent conduct, a plaintiff claiming NIED must still

17

prove that her employer should have realized that its conduct involved an unreasonable risk of causing emotional distress. See Faulkner v. Tyco Electronics Corp., 552 F.Supp.2d 546, 559 (M.D.N.C.,2008) (citing Johnson v. Ruark Obstetrics and Gynecology Assocs., P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)). The plaintiff must also show that her employer was aware that such distress might result in illness or bodily harm. Id.

With regard to defendants Williams and Nordan, plaintiff fails to meet the first element of an NIED claim because she only alleges intentional conduct as to these two defendants. As discussed earlier, the only allegations plaintiff makes with regard to defendant Williams are that he demoted plaintiff in March 2008 and that he terminated plaintiff in December 2008. These are intentional acts - intentional statements made by him and intentional actions allegedly taken by him. Plaintiff's allegations regarding defendant Nordan's conduct also consist of intentional acts. Plaintiff's conclusory statement that "Defendants engaged in negligent conduct toward Plaintiff by failing to exercise the duty of care that a reasonable and prudent person would use under the same or similar circumstances," does not allege facts that defendants acted negligently. (Compl. ¶ 95.) Additionally, plaintiff has also failed to show how defendants' conduct would forseeably cause plaintiff severe emotional distress. See Bratcher v. Pharmaceutical Product Development, Inc., 545 F.Supp.2d 533, 545-546 (E.D.N.C. Apr. 7, 2008).

Plaintiff's claim for NIED against defendant Leith is based on *respondeat superior*, and it fails for the same reasons stated above. Plaintiff fails to allege facts to suggest that defendant Leith acted negligently. A conclusory statement in plaintiff's complaint that "the actions of Defendants as described herein were negligent toward Plaintiff," does not state a claim that Leith acted negligently. Additionally, plaintiff does not allege facts to show that severe emotional distress was

reasonably foreseeable, based on the conduct alleged. See Bratcher, 545 F.Supp.2d at 546.

Accordingly, defendants' motion to dismiss plaintiff's claims for IIED and NIED as to all defendants is granted.

## CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part defendants' motion to dismiss (DE # 5). Defendants' motion to dismiss plaintiff's Title VII sex discrimination and wrongful discharge claims against defendant Leith is DENIED. On these claims, together with plaintiff's retaliation claim, the case will proceed. Defendants' motion to dismiss plaintiff's claim for negligent hiring, retention, and supervision against defendant Leith, plaintiff's claim for NIED against all defendants, and plaintiff's claim for IIED against all defendants, is GRANTED.

SO ORDERED, this the 8th day of May, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge